JAMES C. NIELSEN (111889)
   *jnielsen@nielsenhaley.com*
CHRISTINE CUSICK (280646)
   *ccusick@nielsenhaley.com*
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone:  (415) 693-0900
Facsimile:  (415) 693-9674

Attorneys for plaintiff,
Philadelphia Indemnity Insurance Company

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania corporation,  )<br>                    Plaintiff,  )<br>       )<br>       v.  )<br>       )<br>MARKEL INSURANCE COMPANY, an Illinois corporation,  )<br>                    Defendant.  )<br>       )<br>_____  ) | Case No.:  3:13 – cv – 5013<br><br>**COMPLAINT FOR CONTRIBUTION**<br><br>(DEMAND FOR JURY TRIAL) |

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia")

complains against defendant Markel Insurance Company ("Markel") as follows:

## FIRST CLAIM FOR CONTRIBUTION

### Jurisdictional Allegations

1.     At all times herein mentioned plaintiff Philadelphia was and is a

corporation organized and existing under the laws of the state of Pennsylvania, with

its principal place of business in Bala Cynwyd, Pennsylvania.

2.     At all times herein mentioned defendant Markel was and is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business in Glen Allen, Virginia.

3.     Philadelphia files this action for equitable contribution in order to obtain an adjudication of Philadelphia's and Markel's respective rights, duties, and obligations under the insurance policies issued by the parties to their common insured, Sam Honey ("Honey"), in connection with an underlying state-court lawsuit and settlement, as alleged below.

4.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states.  The amount in controversy, exclusive of interest and costs, exceeds $75,000, the jurisdictional minimum as specified under 28 U.S.C. § 1332.  As set forth within, Philadelphia seeks at least $684,908, plus prejudgment interest, in contribution from Markel.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the parties' current dispute occurred in this district.  As alleged below, the underlying lawsuit was filed in a state court residing within this district, concerning conduct that arose within this district, and against a common insured, Honey, who is a resident of this district.

## The Underlying Lawsuit

6.     On July 21, 2010, Bryana Robles sued Gregory Tatton, Honey, and Sonoma Valley Youth Soccer Association, Inc., ("Sonoma") for damages arising from alleged sexual battery, sexual harassment, negligent hiring, negligent supervision, and general negligence in an action titled *Robles v. Gregory Tatton, et al.*, Sonoma County Superior Court Case No. SCV 247799, referred to here as the "*Robles* action."

7.     Honey was the President of Sonoma, a nonprofit public-benefit corporation located in Sonoma County, California.  Honey was responsible for implementing and enforcing the polices and procedures of Sonoma.

8.      Upon information and belief, Philadelphia alleges that Sonoma, through Honey, hired Tatton as a soccer coach, and Honey supervised Tatton with regard to his position as a coach.

9.      Tatton coached Robles's soccer team when she was fifteen and sixteen years old.  Honey acted as the assistant coach of Robles's soccer team.

10.    As of March 2007, Robles's soccer team "The Arsenal" was duly registered with the California Youth Soccer Association ("CYSA").

11.    As of March 2007, Robles's soccer team "The Arsenal" also was duly registered with United States Club Soccer.   A copy of the United States Club Soccer Official Roster for the Arsenal, listing Tatton as coach, Honey as assistant coach, and Robles as a player, is attached as **Exhibit A**.

12.    Upon information and belief, on multiple occasions from June to November 2007, when Tatton was Robles's coach, Tatton engaged in sexual intercourse and other sexual activities with Robles.

13.    During this same period, Tatton consumed alcohol in front of Robles and other players and shared hotel rooms with female players, including Robles while traveling for soccer games.  Robles alleged that Honey was aware of Tatton's alcohol consumption and sharing of hotel rooms with female players yet failed to discipline Tatton.

14.    Tatton was criminally prosecuted in Sonoma County Superior Court on charges of having unlawful sex with a minor (Robles.)  He pleaded no contest to six counts of unlawful sex with a minor.  He was sentenced to five years' probation and ordered to register as a sex offender.

15.    Robles alleged that Honey knew or should have known about Tatton's propensity for sexual misconduct and was therefore legally responsible for and liable to Robles for Tatton's actions.  Robles also alleged that Honey failed to use ordinary care in the hiring, supervision, training and/or retention of Tatton.

16.    Based on these allegations, the *Robles* complaint alleged nine causes of

1  action.  Two were against Tatton alone, those for sexual battery and assault.  Three

2  were against all of the defendants:  sexual harassment in violation of Civil Code §

3  51.9; intentional infliction of emotional distress; and negligent infliction of

4  emotional distress.  Four were against Honey and Sonoma:  negligent hiring,

5  negligent supervision, negligent retention, and general negligence.  The *Robles*

6  complaint sought various measures of damages against Tatton, Honey, and Sonoma.

7  ## The Insurance Policies and Markel's Failure to Defend Honey

8  17.    Philadelphia insured CYSA (of which, as alleged earlier, Sonoma was a

9  member) under a general commercial liability insurance policy, number

10  PHPK188900, effective September 1, 2006, through September 1, 2007.  The

11  Philadelphia policy provided coverage for, among other things, abuse or molestation

12  subject to a limit of liability of $1 million per person abused or molested and an

13  aggregate limit of $2 million.  Multiple incidents of abuse or molestation involving a

14  person that takes place over multiple policy periods are deemed as one occurrence

15  and are subject to the coverage limits in effect at the time of the first incident.

16  18.    Philadelphia's policy had an "Amateur Sports Amendatory

17  Endorsement" that added to the "Who Is An Insured" section of the policy "members

18  of the governing body and/or their appointed officers (including volunteer workers

19  or individuals paid less than $5,000 per year for their assistance), Association,

20  League, Team, Camp or School Officers or Officials, Coaches, Managers, Trainers

21  and their Assistants…."  Coverage was limited to "[t]hose operations, activities and

22  events that are sanctioned by the 'Association' and that are necessary or incidental to

23  the classifications scheduled on the policy."  Honey qualified for coverage under this

24  provision.

25  19.    Philadelphia defended Honey and Sonoma in connection with the

26  *Robles* action and incurred $269,816 in their joint defense.

27  20.    The *Robles* action settled on June 11, 2012.  Philadelphia paid $1.3

28  million of a $1.5 million settlement to settle the *Robles* action on Honey's and

1   Sonoma's behalf.

2      21.     Upon information and belief, Philadelphia alleges that Markel insured

3   United States Club Soccer under a general liability insurance policy, number

4   3602AH235480-5, effective March 1, 2007 through March 1, 2008, and providing

5   coverage for sexual abuse and sexual molestation coverage by endorsement.  That

6   endorsement provides coverage for damages that result in "bodily injury", "personal

7   injury" or "advertising injury" because of sexual abuse, molestation or exploitation

8   arising from negligent hiring, training and supervision practices subject to a per

9   occurrence and aggregate limit of liability of $1 million and $2 million, respectively.

10     22.     Honey qualified as an insured under Markel's policy for United States

11  Club Soccer.  The policy has a "Sports Liability Endorsement" that added to the

12  "Who Is An Insured" section of the policy "[t]eam members, managers, coaches,

13  assistants . . . and other individuals participating in the official functions of the

14  named insured."  Honey was an assistant coach to Robles's soccer team, the Arsenal,

15  a team registered with United States Club Soccer.  In this role, Honey participated in

16  the organization and administration of United States Club Soccer events during the

17  period of abuse, June through November 2007.  Attached as **Exhibit B** is a copy of

18  Sonoma's Account QuickReport for the Arsenal, complete with markings next to

19  each United States Club Soccer event that the Arsenal paid to attend.  Thus, Honey

20  was not only an assistant coach of a United States Club Soccer team, as President of

21  Sonoma he "participat[ed] in the official function" of Markel's named insured,

22  United States Club Soccer, for purposes of Markel's "Sports Liability Endorsement."

23     23.     Honey also qualifies as an insured based off his role as President of

24  Sonoma, which was a member organization of United States Club Soccer.  In that

25  capacity, he engaged the perpetrator, Tatton, as the coach for the Arsenal.

26     24.     As an insured, Honey was covered by Markel's "Sexual Abuse &

27  Sexual Molestation Liability Coverage" endorsement, which provides coverage for

28  several of the claims in the Robles suit.  That endorsement states, in part, "We will

pay those sums the insured becomes legally obligated to pay as damages that result in 'bodily injury', 'personal injury' or 'advertising injury' because of sexual abuse, molestation or exploitation arising from negligent hiring, training and supervision practices."  As noted above, Honey himself was the person who hired, supervised, and retained coach Tatton, the sexual abuser.  Thus, Markel's policy applies to Robles's claims against Honey.

25.    The allegations asserted against Honey in the *Robles* action potentially set forth claims for damages covered under the sexual abuse and sexual molestation liability coverage part of the Markel policy.  Markel, therefore, was obligated to defend and indemnify Honey in connection with the *Robles* action under the terms of the Markel policy.

26.    Sonoma tendered defense of the *Robles* claim to Markel on August 20, 2010.  Yet Markel did not defend Honey in the *Robles* action.  Although Markel engaged in settlement negotiations, it denied any obligation to defend or indemnify Honey.

27.    Despite alleging it had no duty to defend or indemnify Honey, Markel contributed $200,000 to the settlement of the *Robles* action.

28.    Sonoma's alleged liability was based entirely on Honey's conduct in hiring and failing to supervise Tatton, such that Sonoma's alleged liability was entirely derivative of Honey's liability.

29.    The period of alleged abuse overlapped with the time that Honey participated in the official functions of United States Club Soccer.  The Markel policy provided coverage for the policy period March 1, 2007 through March 1, 2008, which covered the period of abuse alleged to be from June to November 2007. **Exhibit A** shows that the team was registered with United States Club Soccer at least from June 16, 2007 through August 1, 2007.  Multiple instances of abuse allegedly occurred during that time period.  For example, **Exhibit B** shows the United States Club Soccer events that the team paid for and attended during this time period,

including a May 31, 2007 payment for the July 2007 "Albon Cup Showcase" in San Diego, which is a tournament hosted in part by United States Club Soccer and where there were alleged instances of abuse.

30.     As a proximate result of Markel's refusal to defend its insured Honey, Philadelphia has been required to bear, and accordingly has incurred and paid, the entire expense of defending and over 86% of the expense in indemnifying Honey in connection with the *Robles* action, more than Philadelphia's fair share.

31.     Philadelphia is thus entitled to an award of contribution against Markel to partially reimburse Philadelphia for the amounts it had incurred and paid in excess of its share of expenses in defending and indemnifying Honey against the *Robles* action.  Philadelphia contends that Markel should have borne at least fifty-percent of all expenses incurred and paid in Honey's defense.  As Philadelphia paid $269,816 in defense fees, Markel is obligated to reimburse Philadelphia at least $134,908, plus prejudgment interest.  Philadelphia also contends that Markel should have born at least fifty-percent of the settlement.  As Philadelphia paid $1.3 million and Markel paid $200,000 to the settlement, Markel is obligated to reimburse Philadelphia at least $550,000, plus prejudgment interest.  Adding defense and indemnity obligations together, Markel is obligated to reimburse Philadelphia at least $684,908, plus prejudgment interest**.**

### Prayer for Relief

WHEREFORE, Philadelphia prays for judgment as follows:

a.     That the Court order and enter a money judgment against defendant Markel and in favor of Philadelphia in the amount of at least $684,908, plus prejudgment interest thereon, to reimburse Philadelphia for the defense and settlement expenses it incurred.

b.     That Philadelphia be awarded its costs of suit incurred herein; and

c.     For such other and further relief as the Court deems just and proper.

**Demand for Jury**

Philadelphia hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

October 28, 2013                    NIELSEN, HALEY & ABBOTT LLP

By:_____

Christine B. Cusick
Attorneys for plaintiff,
Philadelphia Indemnity Insurance Company